AMELIA HINCKLEY, Admx., Appellee, *vs.* WILLIAM H. COLVIN, Appellant.

*Opinion filed February 20, 1908—Rehearing denied April 8, 1908.*

1. BILLS AND NOTES—*administrator of surety's estate is entitled to collateral upon payment of the debt.* A receiver of an insolvent bank who believes that the collateral held by the bank as security for a note is worth more than the debt cannot sell the collateral to the administrator of the deceased surety's estate for less than its value, but he is bound to deliver the collateral to the administrator upon payment of the amount due on the note, and the latter may hold the collateral to indemnify the estate.

2. SAME—*when sale of collateral divests administrator of all interest.* A sale, by the administrator of a deceased surety's estate, of shares of stock which had been held by a bank as collateral security for the note and which were delivered to him upon his paying the amount due on the note, divests the interest of the administrator, whether he sells the same as owner or pledgee, and

relieves the stock of any claim or lien which the administrator might have had upon it to indemnify the surety's estate.

3. PRINCIPAL AND AGENT—*agent cannot profit by transaction to principal's injury.* A stock broker who agrees with the administratrix of the estate of a deceased maker of a note to find a purchaser for shares of stock which had been deposited by the maker as collateral security for the note and which had come into the hands of the administrator of the deceased surety's estate, cannot, by buying the stock in his own name, reap the benefit of the transaction and hold the stock as against his principal, who may redeem the stock from the broker upon re-imbursing him for his outlay.

CARTER, J., specially concurring.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

S. S. GREGORY, CONRAD H. POPPENHUSEN, and JOSEPH L. McNAB, for appellant.

ALEXANDER S. BRADLEY, and ASHCRAFT & ASHCRAFT, (EDWIN M. ASHCRAFT, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Amelia Hinckley filed her bill in the superior court of Cook county, which was afterward amended and supplemental bills were filed, so that as submitted on the hearing the relief sought was to be permitted to redeem 2050 shares of stock of the Vermilion Range Land Company which had been pledged by Francis E. Hinckley, in his lifetime, to the National Bank of Illinois.

On May 1, 1890, Francis E. Hinckley borrowed of the National Bank of Illinois $12,500, for which he gave his note guaranteed by J. Irving Pearce. As collateral security for the payment of the note he delivered to the bank certificates for 2050 shares of the capital stock of the Vermilion Range Land Company and other shares of stock. In 1896 a note for $5000, also guaranteed by J. Irving Pearce, was

given in renewal of the balance due on the first note. The same shares of stock were deposited as collateral security for the renewal note, which contained a power of sale of said collaterals by the bank or its assigns, at public or private sale and without notice, in default of payment of the note. A receiver was appointed for the bank in December, 1896. On February 7, 1898, J. Irving Pearce paid $2000 on the note. Francis E. Hinckley died in 1900, and his widow, Amelia Hinckley, was appointed administratrix of his estate. J. Irving Pearce died in 1902, and Myron Pearce was appointed administrator of his estate. Neither Hinckley nor his administratrix ever made any payment on the note or re-paid any part of the payment made by Pearce. The balance of $4680 due on the note was allowed against Pearce's estate by the probate court of Cook county on July 25, 1904. Mrs. Hinckley resided in New York, and her business, and that of her husband's estate, was in charge of George C. Evans, who in 1903 began a correspondence with Myron Pearce in regard to the stock. He had a copy of the $5000 note, containing a description of the stock, and wrote for information in regard to it. Pearce answered with a letter conveying the impression that his father had taken up the note, and that, as administrator of his father's estate, he held the stock as security for the note. Finally, at Evans' request, Pearce agreed to take $4000 and release the Vermilion Range Land Company stock. In the meantime the appellant, William H. Colvin, who was a stock broker in Chicago, had written a letter addressed to Francis E. Hinckley, inquiring about the stock and offering sixty cents a share for it if Hinckley still owned it. This letter was answered by Evans, who declined to sell at the price named. Afterward, on August 6, 1904, Evans wrote to Colvin making an offer of the stock at five dollars a share. On August 12 Colvin wrote to Evans that he was authorized to offer three dollars a share for 500 shares, that his commission would be ten cents per share, and proposing to

try to get an offer on the balance if Evans cared to have him do so. Evans accepted the offer for the 500 shares and wrote Colvin that he would be glad to hear from him at any time with an offer for the balance. The trade for the 500 shares was not carried out. On November 23, 1904, the stock was delivered by the receiver of the bank to Myron Pearce, who paid therefor the amount due on the note, $4758, and on the same day sold the stock for $4920 to Colvin, who purchased for Livingston W. Fargo. After this suit was begun Fargo returned the stock to Colvin, who still holds it. It is claimed by the appellee that the relations to her of Pearce and Colvin were such that neither of them could acquire a title to the stock and cut off her right to redeem.

Pearce, Colvin, Fargo and the Vermilion Range Land Company were made defendants to the bill, which was dismissed in the superior court for want of equity. The Appellate Court reversed the decree and remanded the cause, with directions to enter a decree permitting the complainant to redeem upon payment of the sum of $4758, the amount paid by Myron Pearce to the receiver of the bank, and the sum of $2000 paid by J. Irving Pearce in his lifetime, with interest from the respective dates of payment. William H. Colvin has appealed to this court, and the complainant has assigned cross-errors on that part of the order of the Appellate Court requiring her to pay the $2000 paid by J. Irving Pearce, and interest thereon, in order to redeem.

The transaction between the receiver of the bank and Myron Pearce amounted to a surrender of the collaterals to the surety upon his payment of the note. Pearce had tried to buy the stock pledged, for less than the amount due on the note, offering first $500 and later $4000, but these offers were refused. He wrote to Evans that when he pressed the bank for an answer they said they would not sell for less than $6000 or $7000, and that the only thing he could do was to demand the privilege of paying the bal-

ance on the note and taking back the securities. Again he wrote to Evans, two days after he got the stock, that he tried to buy for $4500, but without any result, and he finally had to pay the full amount of the claim and interest; that they had to sell to him on tendering the full amount of their claim against his father's estate. He testified that when he and Jones, who was acting for the receiver of the bank, talked about the value of the stock the latter thought it was worth $6000 or $7000, and the reason he would take the amount due on the note for that stock was, that there was a written agreement to turn over to J. Irving Pearce any amount realized over what was owing by J. Irving Pearce. When Jones told him he would accept the amount proved up against J. Irving Pearce's estate, with interest, and deliver the stock, Pearce said he would accept it and pay up.

Myron Pearce had the right, as administrator of his father's estate, to require the receiver to surrender the stock to him upon payment of the amount for which it was pledged. The receiver believed it was worth more than the amount of the debt. He had no right to sell it for less than its value. He had no right to sacrifice the interest of the Hinckley estate. But he was bound to surrender the collaterals upon payment of the debt by the surety, and the evidence is convincing that this was what was intended to be done and was done. Myron Pearce received the stock as administrator, and held it as collateral security to indemnify his father's estate for the payment of Hinckley's debt.

Colvin, the appellant, was appellee's agent to procure a purchaser of this stock. He had offered his services as a stock broker for this purpose in his letter of August 12, 1904, for a commission of ten cents a share, and the offer was accepted by Evans' letter of August 15. Nothing occurred afterward to terminate this relation. Colvin was thoroughly acquainted with the situation at the time he got the stock from Pearce, with the lien upon the stock and the relations of all the parties. He had no right to put himself

in a position adverse to the interest of Mrs. Hinckley. His agency disabled him from dealing on his own account with the stock. (*Kerfoot* v. *Hyman,* 52 Ill. 512; *Cottom* v. *Holliday,* 59 id. 176.) Though he was acting for Fargo in the purchase, yet Fargo is not making any claim to the stock. He has returned it to Colvin and received from the latter the consideration paid. Colvin occupies the same position as if he had acted directly in his own name in making the purchase, and he cannot retain against Mrs. Hinckley the benefit of the contract. She is entitled to whatever advantage may be derived therefrom.

Whatever view may be taken of the sale by Pearce, whether he sold as owner or pledgee, he parted to Colvin with whatever interest he had in the stock. As between him and Colvin the sale was valid. As between them Colvin acquired the stock free from any lien. Colvin cannot keep it as against Mrs. Hinckley, because when he purchased it he was her agent to procure a purchaser for this same stock. The sale relieved the stock of any claim or lien which Pearce might have on it, but it does not enable Colvin to hold it against Mrs. Hinckley. She is entitled to claim it from him, as he holds it, free from any lien.

The gift alleged in the bill, by virtue of which Mrs. Hinckley claims an individual ownership of the stock, was not established by the evidence, and her ownership is in her representative capacity.

It appears that Mrs. Hinckley negotiated for the sale of the stock to A. M. Miller. He is not a party to the bill. Whether the negotiations resulted in a valid contract, whether he will seek to enforce any contract against Mrs. Hinckley, and whether, as between them, he has any interest in the stock, are not material questions now. No such interest appears in him as requires that he should be made a party to this suit.

The judgment of the Appellate Court will be reversed and the cause remanded to the superior court of Cook

county, with directions to enter a decree giving the complainant, as administratrix of the estate of Francis E. Hinckley, the right to redeem the 2050 shares of Vermilion Range Land Company stock by paying into court, within thirty days from the entry of the decree, $4920, with interest thereon from November 23, 1904, and in case of her failure to pay the same into court within the time limited that her bill be dismissed; that the defendant, William H. Colvin, within two days after such deposit and notice thereof to him, deposit with the clerk of said court, for the complainant, the certificates for said 2050 shares of stock, with an assignment and power of attorney for their transfer to the complainant endorsed thereon, and that upon the deposit of such certificates the clerk pay to said Colvin the money so deposited with him by the complainant. The costs of this court will be paid by the appellant.

*Reversed and remanded, with directions.*

Mr. JUSTICE CARTER, specially concurring: I do not concur in this opinion in so far as it sustains the appellee's assignment of cross-error upon the judgment of the Appellate Court.